# IN THE COURT OF APPEALS OF IOWA

No. 21-1856
Filed March 8, 2023

**DONALD LEROY SMITH JR.,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.

Defendant appeals the denial of his application for postconviction DNA testing. **AFFIRMED.**

John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

Following his jury convictions for possession of a controlled substance with intent to deliver and failure to affix a drug tax stamp, Donald Smith applied for postconviction DNA testing under Iowa Code section 81.10 (2021) on a variety of evidence used to tie him to the drugs.

In 2016, Smith was arrested while digging through dumpsters. He was patted down by Deputy Jason Tart and placed in the back of the police vehicle, though Deputy Tart testified at trial that he did not look inside Smith's boots. While driving to the county jail, the deputy noted Smith was moving around in the backseat, bending over, and kicking at the cage. When Smith was taken out of the car, he was slow to exit and his pant leg was raised over his boot, which it had not been when he entered the car. After taking Smith into the jail, Deputy Tart searched his backseat and found a lipstick case in plain sight and a black leather coin purse pushed underneath the cage. The lipstick case held two baggies of a white crystalline substance and the coin purse held four baggies of the same substance and $700 in cash; the substance was tested and found to be more than twelve grams of methamphetamine.

At Smith's criminal trial, as the facts developed, Deputy Tart testified he not only visually searched the backseat before Smith's transport but also ran his fingers through the space between the floor and the cage to make sure there was nothing there.[1] Smith maintained the items were not his. Even so, a jury found

---

[1] Deputy Tart explained that about twelve hours earlier, he gave someone a ride home after they were in an accident. This was the last person in his backseat before Smith.

Smith guilty, and a panel of this court upheld the conviction on appeal. *State v. Smith*, No. 18-2052, 2020 WL 376554, at *3 (Iowa Ct. App. Jan. 23, 2020).

In his application for postconviction DNA testing, Smith sought DNA testing on the lipstick case, baggies, and coin purse to "dispositively exclude Smith as a person who was ever in possession of the contraband, and/or definitely identify the perpetrator, thereby creating a reasonable probability of a different outcome had the DNA test results been presented at trial." *See* Iowa Code § 81.10(1) (allowing a convicted defendant to apply for DNA testing "on a forensic sample collected in the case for which the person stands convicted"). In short, Smith believed the testing would prove his innocence.

Iowa Code section 81.11(1) lays out the standard courts use to evaluate an application for DNA profiling and requires the court to grant the application if all of the following five factors apply:

> a. The forensic sample subject to DNA profiling is available and either DNA profiling has not been performed on the forensic sample or DNA profiling has been previously performed on the forensic sample and the defendant is requesting DNA profiling using a new method or technology that is substantially more probative than the DNA profiling previously performed.
> b. A sufficient chain of custody has been established for the forensic sample.
> c. The identity of the person who committed the crime for which the defendant was convicted was a significant issue in the crime for which the defendant was convicted.
> d. The forensic sample subject to DNA profiling is material to, and not merely cumulative or impeaching of, evidence included in the trial record or admitted to at a guilty plea proceeding.
> e. The DNA profiling results would raise a reasonable probability that the defendant would not have been convicted if such results had been introduced at trial.

The district court denied the application because Smith failed to "show[] a reasonable probability that any testing of the lipstick case or coin purse would change the results of his criminal trial."

On appeal, Smith contends that if the test showed his DNA was not on the items, he could not be their owner and if someone else's DNA was present, it could point to an alternative suspect. We review the district court's denial of Smith's application for errors at law. *See Brodene v. State*, No. 11-0837, 2012 WL 5356036, at *1 (Iowa Ct. App. Oct. 31, 2012).

Thus, our standard for whether the district court should have granted Smith's application for postconviction DNA testing under section 81.11 requires us to consider if, were the results to come back as Smith hopes, there is a reasonable probability they would have prevented his conviction. *See* Iowa Code § 81.11(1)(e). And if the answer is yes, then Smith should have been allowed to move forward with the testing.

Considering the application through this lens, Smith cannot show how DNA evidence would have changed the outcome of his trial. *See Mark v. State,* No. 09-0800, 2013 WL 5498146, at *2 (Iowa Ct. App. Oct. 2, 2013) (discerning no error in the ruling that the absence of defendant's DNA would not prove he did not commit the crime and presence of an unknown person's DNA is not evidence someone else had the contraband in the vehicle). A showing of someone else's DNA on the items without any evidence of their opportunity to deposit them in the deputy's car would not overcome the evidence against Smith, which a panel of this

court determined was sufficient to support his conviction.[2]  *See Smith*, 2020 WL 376554, at *2–3.  Even a lack of DNA on the items in this instance would not rebut the circumstantial evidence tying Smith to the items.  *See State v. Poyner*, 306 N.W.2d 716, 718 (Iowa 1981) ("[C]ircumstantial evidence is just as probative as direct.").  And, of course, a showing of Smith's DNA would only confirm the conviction.  So, Smith is unable to show the results of DNA testing, regardless of what they would be, would create a reasonable probability he would not have been convicted.  *See State v. Enderle*, No. 20-0308, 2021 WL 210763, at *3 (Iowa Ct. App. Jan. 21, 2021) (affirming a district court's denial of the application for DNA profiling when the applicant did not show there was a reasonable probability testing would have changed the case's outcome).  As such, we affirm the district court's denial of Smith's application for postconviction DNA testing.

**AFFIRMED.**

---

[2] Smith admits that he did not request DNA from, nor does he know the identity of, the individual who was in Deputy Tart's car earlier that day.  And as the State points out, it does not make sense that the person getting the lift home earlier would leave contraband and $700 cash in the deputy's vehicle.